UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA FAITH TORMAN,

Case No. No. 17-10859

        Plaintiff,

District Judge Nancy G. Edmunds

v.

Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Patricia Faith Torman ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

## I.   PROCEDURAL HISTORY

In her most recent application for benefits, Plaintiff applied for SSI on October 29, 2013, alleging disability as of June 15, 2010 (Tr. 191). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on April 29, 2015 in Flint, Michigan

-1-

before Administrative Law Judge ("ALJ") Regina Sobrino (Tr. 31).  Plaintiff, represented by attorney Patrick Marutiak, testified, (Tr. 36-48), as did vocational expert ("VE") Kenneth Browde (Tr. 49-56).  On October 19, 2015, ALJ Sobrino found Plaintiff not disabled (Tr. 9-26).

On January 12, 2017, the Appeals Council declined to review the administrative decision (Tr. 1-3).  Plaintiff filed suit in this Court on March 17, 2017.

## II.  BACKGROUND FACTS

Plaintiff, born, July 28, 1966, was 49 at the time of the administrative decision (Tr. 26, 191).  She received a GED in 1985 and worked previously as a cleaner and home health care provider (Tr. 215).  She alleges disability due to depression, anxiety, and back, leg, and stomach problems (Tr. 214).

### A.  Plaintiff's Testimony

*Plaintiff's attorney prefaced his client's testimony by amending the alleged onset of disability date to September 18, 2013.*

Plaintiff then offered the following testimony:

She was unable stand for more than five minutes and required the use of a cane (Tr. 37).  She was unable to sit for more than 10 minutes or walk for significant distances (Tr. 38).  She was unable to lift, carry, push, or pull over five pounds (Tr. 38).  She had been diagnosed with Carpal Tunnel Syndrome ("CTS") (Tr. 38-39).  She was left-handed (Tr. 39).  She had trouble reaching, bending, and climbing stairs (Tr. 39).  She relied on her brother to

-2-

perform household, cooking, and shopping chores (Tr. 39-40).  She had not left the house since picking up some medication two weeks earlier (Tr. 40).  During the trip, she stayed in the car while someone else went into the store (Tr. 40).  She did not participate in any social activities and spent her time reading and watching television (Tr. 40).  She was "slow" at bathing and dressing (Tr. 40).  She held a driver's license but did not drive due to the condition of anxiety (Tr. 40-41).  She did not use public transportation and had not traveled more than 75 miles away from her home during the relevant period (Tr. 41).  She took Norco, Neurontin, Fioricet, and vitamins (Tr. 41-42).  She did not know whether she experienced medication side effects (Tr. 42).  She saw a psychological therapist but did not see a psychiatrist (Tr. 42).

She was last hospitalized in 2013 at which time she underwent colon surgery (Tr. 43). She still experienced colitis requiring her to use the bathroom at least five times in an eight-hour day (Tr. 43-44).  She was unable to eat much more than toast due to digestive problems (Tr. 47-48).  The colitis had worsened in the past few months (Tr. 44).  She had not shopped in about a year due to anxiety in public places (Tr. 45).  On a typical "good" day, Plaintiff spent her time reading, watching television, and talking to her mother (Tr. 46).  On "bad" days (occurring around six times a month) Plaintiff spent most of day reclining (Tr. 46).  She experienced ongoing depression since her only child died in 2012 (Tr. 47).

### B.  Medical Records

### 1.  Treating Records

August, 2012 psychological intake records note Plaintiff's report that she could not "take care of herself due to health issues" (Tr. 253).  The records state that Plaintiff did not describe the source of her disability (Tr. 253).  Plaintiff reported that she was grieving the recent loss of her daughter and her current inability to see her granddaughter (Tr. 253).  She took "a long time to fill out . . . paperwork," and reported that she had a history of learning delays (Tr. 253, 270).  She exhibited anxiety but was cooperative with normal communicative abilities (Tr. 253, 259).  She denied hallucinations (Tr. 260).  Intake records state that the "only real safety and behavioral concerns relate to [physical] health issues" (Tr. 269).  Treatment for anxiety and grief was recommended (Tr. 272).  She was assigned a GAF of 44 due to anxiety and depression; occupational and housing problems; and grieving the loss of her daughter (Tr. 273).

September, 2012 imaging studies of the left ankle showed only mild osteopenia and osteoarthritis (Tr. 246).  Imaging studies of the left foot were also unremarkable (Tr. 247).  Psychological treatment records from the same month show that Plaintiff continued to grieve the loss of her daughter (Tr. 275).  Mohammed Saleem's records from the same month note that imaging studies of the abdomen showed constipation (Tr. 336).  Dr. Saleem's October, 2012 treatment records note that Plaintiff denied headaches or extremity pain (Tr. 304-305).  She appeared fully oriented with a normal mood (Tr. 306).  December, 2012 imaging studies

of the lumbar spine were negative except for constipation (Tr. 312).

In January, 2013, Plaintiff underwent surgery for a small bowel obstruction (Tr. 284, 309-310, 408). She denied a history of headaches (Tr. 284-291). Dr. Saleem's March, 2013 records note the "active" problems of anxiety, anemia, backache, CTS, and migraine headaches (Tr. 318). Plaintiff reported that the condition of depression had been "stable" since her last visit (Tr. 301). In August, 2013, Plaintiff sought treatment for left knee pain (Tr. 314). Dr. Saleem's records from the same month note Plaintiff's report that her depression had improved (Tr. 295). October, 2013 counseling records by Emily Kozan note that Plaintiff was applying for SSI (Tr. 424). Plaintiff reported moderate depression and a low level of anxiety (Tr. 424). She noted that she also experienced problems "eating and keeping food down" which resulted in weight loss (Tr. 424). She denied problems in daily activities, relationships, housing, or help finding work but reported that she needed help in "community activities" and becoming more social and less fearful (Tr. 444-445). She appeared "polite and tearful," particularly when discussing the loss of her daughter and inability to see her grandchild (Tr. 450). The following month, therapist Kozan composed a letter on behalf of Plaintiff's application for benefits, opining that Plaintiff "would not function well in a work environment due to her mental health impairments" and that working would exacerbate her psychological condition (Tr. 454).

February, 2014 counseling records note Plaintiff's report that therapy had been "really helpful . . . ." (Tr. 518). The following month, Plaintiff reported an improvement in her

family situation, low anxiety, and that she had made a new acquaintance (Tr. 515).

In May, 2014, Therapist Kozan spent counseling time helping Plaintiff prepare paperwork required for an SSI application (Tr. 513).    Kozan provided a psychiatric examination report to the State of Michigan, noting that due to anxiety and depression, Plaintiff had trouble leaving her home for any reason (Tr. 381).  Kozan noted a fair mood and memory (Tr. 382).   The same month, Dr. Saleem also provided a report to the State of Michigan, noting a diagnosis of anxiety (Tr. 386).  Dr. Saleem also noted that Plaintiff was unable to lift even 10 pounds or do any pushing or pulling (Tr. 387).  He found that Plaintiff could stand and/or walk for at least two hours in an eight-hour workday (Tr. 387).  He found no mental limitations (Tr. 388).  Plaintiff failed to show for a followup counseling session (Tr. 510).  Dr. Saleem's July, 2014 records note an unremarkable psychiatric condition, a normal gait, and normal movement in all extremities (Tr. 411-412).

In August, 2014, Plaintiff returned to therapy after a break starting in May, 2014, noting that counseling had "been really helpful . . . ." (Tr. 428, 505).  She rated her depression at 0/10 on the day of the session (Tr. 429).  Plaintiff noted that she spent time with family and friends at her home (Tr. 430).  Plaintiff failed to show for September and November, 2014 counseling sessions (Tr. 502-503).  Dr. Saleem's December, 2014 records note that Plaintiff denied medication side effects and that the back pain was "doing well" (Tr. 458).  Plaintiff reported that the condition of anxiety was "asymptomatic" (Tr. 458).

In January, 2015, Plaintiff reported the need for help with anxiety, obtaining SSI, and

gaining custody of her granddaughter (Tr. 493). She denied other problems (Tr. 493). A February, 2015 CT of the head was unremarkable (Tr. 462). The same month, Kozan composed a letter stating that Plaintiff was unable to work due to "problems related to [her] social environment, occupational problems, housing problems, economic problems," and grief related to the death of her daughter (Tr. 469). She noted that Plaintiff was making "minimal" progress in therapy (Tr. 469). The following month, therapist Kozan completed an assessment of Plaintiff's work-related work abilities, finding "extreme" limitation in understanding, remembering, and carrying out complex instructions and making complex judgments (Tr. 475). Kozan found marked limitation in the ability to make simple work-related judgments and in interacting with the public, supervisors, and coworkers (Tr. 475-476). Kozan found Plaintiff "tangential and confused" with poor memory (Tr. 475). April, 2015 counseling records note "8/10" depression due to the upcoming anniversary of her daughter's death (Tr. 478). Plaintiff reported that she was able to cope with recent social stress with "deep breathing and removing herself from the situation" (Tr. 478). Therapist Kozan's August, 2015 records note Plaintiff's report that she was "comfort[a]ble," and was "not sure what changes she would like to make in her life" (Tr. 481).

## 2. Other Evidence

In December, 2013, Matthew P. Dickson, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of a prior abusive relationship and her daughter's recent death from an aneurysm (Tr. 337). Plaintiff reported

panic attacks when leaving the house, migraines, and left leg and lower back problems (Tr. 337). She denied psychiatric inpatient treatment (Tr. 338). She reported that she was terminated from her work doing home care and part-time office work more than three years earlier (Tr. 338). Plaintiff reported that she got along "OK" with others but could not sit still for long (Tr. 338). She reported that she was able to wash dishes, take care of her personal needs, shop at least once a month, and handle money (Tr. 338). Dr. Dickson noted a normal gait and posture (Tr. 337). Plaintiff denied problems walking (Tr. 338). Dr. Dickson noted a normal thought process and that Plaintiff was fully oriented with adequate calculation skills (Tr. 339). He concluded that Plaintiff's ability to "understand to, remember, and carry out instructions . . . [was] not overtly impaired" but her ability to "respond appropriately to co-workers and supervision and to adapt to change and stress" was "moderately impaired" (Tr. 340).

Later the same month, Rom Kriauciunas, Ph.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that as a result of affective and anxiety-related disorders, Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 128-129).

### C. Vocational Testimony

VE Kenneth Browde classified Plaintiff's past work as a property manager as

exertionally light and skilled[1] (Tr. 50-53).   The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, education, and work experience:

> [A]ssume a person who cannot perform more than sedentary work as that term is applied in the Social Security regulations and in the *Dictionary of Occupational Titles* [("*DOT*")].   And in addition the person should be able to alternate positions for up to five minutes approximately every 30 minutes.   The person should not have to climb ladders, ropes, scaffolds or stairs.   Person is limited to occasional stooping and blancing.   The person should not have to kneel, crouch or crawl.   Should not be exposed to hazards such as unprotected elevations or work near dangerous moving machinery.   Should not need to use foot or leg controls.   The person should not need to drive as a work duty.   Assume a limitation to simple, routine work with minor changes in the work setting.   Assume that the work should not require interaction with the public, and that there should be . . . only occasional contact with coworkers and routine supervision (Tr. 53-54).

The VE found that the above limitations would preclude Plaintiff's past relevant work, but would allow the hypothetical individual to perform the sedentary, unskilled work of a document preparer (27,000 positions in the national economy); addresser (9,800); and bench inspector (14,500) (Tr. 54).   He testified further that if the same individual were also limited

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

to frequent (as opposed to *constant*) "handling, fingering, feeling, and reaching;" required the use of a cane or; required at sit/stand at will option, the job numbers would not change (Tr. 54). He stated that the need for more than one unexcused absence each month, or, the need to be off task for more than 10 percent of the workday would be work preclusive (Tr. 55).

### D.  The ALJ's Decision

Citing the medical records, ALJ Sobrino found that Plaintiff experienced the severe impairments of "degenerative joint disease/dysfunction, residuals of pelvic and abdominal surgeries, [CTS], migraine headaches, depression, and an anxiety disorder" but that the conditions did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 11). She found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 12-13). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> [T]he opportunity to sit or stand alternatively, provided she is not off task more than 10 % of the work period; no climbing crouching, or crawling; no work around hazards such as unprotected elevations or near dangerous moving machinery; no use of foot or leg controls; frequent handling, fingering, and feeling; no driving as a work duty; simple, routine work with minor changes in the work setting; no work that requires interaction with the public; occasional contacts with co-workers; and routine supervision (Tr. 14).

The ALJ found that she was not bound by the earlier non-disability findings because since the last determination Plaintiff had been diagnosed with degenerative joint disease, CTS, and

a depressive disorder (Tr. 15).  Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform her past relevant work, she could perform the exertionally sedentary work of a document preparer, addresser, or inspector (Tr. 25, 54).

The ALJ discounted the allegations of disability, citing Plaintiff's report that the depression had improved and that the headaches were asymptomatic (Tr. 16, 19).  The ALJ cited January, 2015 records showing that Plaintiff attended church weekly and enjoyed watching movies, reading, playing with her dog, and visiting with her mother (Tr. 19).  The ALJ discounted therapist Kozan's opinion of disabling mental limitation, noting that the findings were not supported by the clinical exams or Dr. Saleem's treating records (Tr. 22).  The ALJ accorded only partial weight to Dr. Saleem's finding that Plaintiff was unable to perform any lifting, noting that the the consultative findings supported the conclusion that Plaintiff could perform a range of sedentary work (Tr. 23).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and

-11-

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

-12-

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### The Medical Sources

Plaintiff argues that the non-disability determination is not supported by substantial evidence. *Plaintiff's Brief,* 16-22, *Docket #17,* Pg. ID 587.  She contends that the ALJ erred by declining to adopt therapist Kozan's opinion of disabling psychological limitation and instead, adopting Dr. Dickson's one-time consultative findings. *Id.* at 16-20.  She also takes issue with the ALJ's adoption of Dr. Kriauciunas' December, 2013 non-examining assessment over Kozan's more recent treating opinion. *Id.* at 20-22.

Plaintiff is correct that while therapist Kozan's opinion is not entitled to the deference accorded an "acceptable" treating source such as a physician or psychiatrist, her opinion "is entitled to consideration due to her expertise and long-term [treating] relationship."[2]  *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); 20 C.F.R. §§ 404.1502, 404.1513.  "[I]t may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. SSR 06–3p, 2006 WL 2329939, at *5 (August 9, 2006).

---

[2]The ALJ refers to Ms. Kozan as "clinical social worker," which is likewise categorized as a non-acceptable medical source.

However, the ALJ provided a thorough explanation for her reasons not to adopt Kozan's finding of disabling limitation (Tr. 21-22).   The ALJ acknowledged that while Kozan was not an acceptable source, her assessments were entitled to consideration in assessing the severity of psychological symptoms (Tr. 22).  She went on to note however that Kozan's opinions and assessments were not consistent with the mental health treatment records, the clinical findings, or the weight of evidence (Tr. 22).  The ALJ cited Plaintiff's report of "positive response to psychotropic medications" and the denial of side effects (Tr. 22).   The ALJ noted that Kozan's finding of extreme psychological limitation was unsupported by Dr. Saleem's treatment notes indicating an unremarkable psychological status and good results from medicine and talk therapy (Tr. 22).   Despite Plaintiff's allegations of ongoing psychological limitation, the ALJ noted that Plaintiff failed to show up to two session after obtaining a disability opinion from Kozan (Tr. 22, 510).  The ALJ noted that despite Plaintiff's sporadic attendance, the treatment notes show good progress (Tr. 22).  The ALJ also took issue with Kozan's 2015 opinion that Plaintiff's condition was declining, noting the treating records suggested that Plaintiff experienced good results from therapy (Tr. 22).

The ALJ's findings are consistent with my own review of the record.  2012 records note that Plaintiff was anxious, but cooperative with normal communicative abilities despite mourning the recent death of her daughter (Tr. 260).  August, 2013 records note that the condition of depression had improved (Tr. 295).  October, 2013 records note "moderate" depression and mild anxiety (Tr. 424).  March, 2014 records state that Plaintiff was interacting

successfully with her family and had made a new friend (Tr. 515).  The record shows that Plaintiff failed to show for four monthly counseling sessions between June and November, 2014 (Tr. 428, 502-503, 505).  She denied depression in August, 2014 and in December, 2014, stated that the condition of anxiety was "asymptomatic" (Tr. 458).  In January, 2015, psychological treatment records note that Plaintiff denied problems except for the need to cope with anxiety and obtain SSI and custody of her granddaughter (Tr. 493).  The ALJ's adoption of the treating, consultative, and non-examining records over Kozan's disability opinions does not constitute grounds for remand.  *See DeLong v. CSS*, 748 F.3d 723, 726 (6th Cir. 2014)(*citing Ulman v. CSS*, 693 F.3d 709, 713 (6th Cir.2012))(substantial evidence standard "does not permit the court to resolve conflicts in evidence").  Rather, the court "must affirm a decision by the Commissioner as long as 'it is supported by substantial evidence and was made pursuant to proper legal standards.'" *Id.*

For the same reasons, Plaintiff's argument that the ALJ erred by adopting Dr. Dickson's December, 2013 consultative findings over Kozan's disability opinions does not provide a basis for remand.  The ALJ accurately noted that Dr. Dickson's finding of only moderate limitations in the ability to socialize with coworkers and supervisors was supported by the treating records showing that Plaintiff was cooperative and able to communicate without difficulty (Tr. 22).  While Plaintiff faults the ALJ for adopting Dr. Dickson's "outdated" December, 2013 consultative findings over Kozan's 2014 and 2015 opinions of disability, the ALJ aptly noted that the treatment notes created subsequent to Dr. Dickson's

consultative exam "d[id] not show significant deterioration" of Plaintiff's mental condition (Tr. 23). While Plaintiff is correct that as a rule "updated" medical records are to be accorded more weight than older ones, *See Brooks v. CSS*, 531 Fed.Appx. 636, 642 (6th Cir. August 6, 2013)(ALJ adoption of non-consulting source's earlier opinion over the more recent examining findings constitutes reversible error), the adoption of the older records over newer ones does not automatically constitute error. Rather, in the instance that "an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence," the reviewing court "generally require[s] 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks*, 531 Fed.Appx. at 642 (*citing Blakley v. CSS,* 581 F.3d 399, 409 (6th Cir. 2009))(internal citations and punctuation omitted). The ALJ provided an extensive discussion of the 2014 and 2015 records showing that Plaintiff experienced good results from counseling and a reduced level of both anxiety and depression (Tr. 18-23). Because the ALJ considered the "new facts" which showed, if anything, an improvement in Plaintiff's psychological condition over the relevant period, the adoption of the December, 2013 consultative findings does not constitute error.

Likewise, the ALJ's adoption of Dr. Kriaucinunas' non-examining finding of only moderate social and concentrational limitation over Kozan's treating finding of extreme limitation does not justify a remand (Tr. 128-129). "'In appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight

-16-

than the opinions of treating or examining sources." *Brooks,* 531 Fed. Appx. at 642 (*citing* SSR 96–6p, 1996 WL 374180, *3 (July 2, 1996)).  In this case, the ALJ's reliance on Dr. Kriaucinunas' findings over Kozan's treating opinion is particularly appropriate given that (1) Kozan's opinion of disabling limitation is almost wholly unsupported by the treating or examining records and, (2) Dr. Kriaucinunas's findings are supported by both the treating records and Dr. Dickson's consultative findings.

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's medical conditions or personal tragedies.  However, the ALJ's determination that she was capable of performing a significant range of sedentary work was comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level.[3]  As such, it should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

---

[3]

Plaintiff turned 50 on July 28, 2016.  As such, the October 19, 2015 finding that she was limited to unskilled, sedentary work could impact a subsequent application for benefits. Under Medical–Vocational Rule 201.14, an individual closely approaching advanced age with Plaintiff's educational background, no transferrable skills, and a limitation to sedentary work generally directs a finding of disability. 20 C.F.R. part 404, subpart P, App. 2. "Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains." *Id.*

-17-

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 25, 2018                                    s/R. Steven Whalen                             
                                                           R. STEVEN WHALEN
                                                           U.S. MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify on January 25, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on January 25, 2018.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen